All right, good afternoon everyone. Is everyone here? Yes. Yes, your honor. All right, this is the time and place set for a status hearing in the case of Navarrete versus Garland. Council, we are aware that this case went to mediation, was not resolved in mediation, so we're curious about what the status of the case is and if there are any avenues for relief still available for the petitioner. So council for petitioner, why don't you start first and let us know where we are with this case. Yes, your honor. Good afternoon. My name is Roger Green for the petitioner and may it please the court in updating this honorable court about the status on this case. Both my office to report petitioner as well as government, council, oil, we have made a headway into moving forward with alternative relief resolution. We at an earlier juncture, a motion was filed and it's not opposed by us to have judicial administrative closure and that was filed with this honorable court on May the 19th of this year. Yes, council, but go ahead, Judge Schroeder. Yeah, well, we understand that, but what is the purpose of that? Are there still ongoing negotiations? Why did you cease mediation? Thank you, Judge Schroeder. Well, just in terms of as an alternative relief, it would give instead of moving forward on the litigation aspect, it would allow him the ability, it's my understanding, it would allow him the ability to remain in the country and have the case if the case is set in abeyance or if the case, if this matter is no longer on track before the court, it would allow him to remain in the country through the avenue administrative closure. Maybe it would be helpful if I chime in since I was the one that was taking place with the mediation. The joint administrative closure is sort of a process our office uses to give DHS a time to consider individual cases for PD and for other purposes. During mediation in this case, there must have been a breakdown in communication or misunderstanding because it wasn't my intent or petitioner's counsel intent to have the case released for mediation. We were both surprised by it. So I think there was a miscommunication between us and Mr. Kaiser, who was the mediator at the time. And so when the court issued its order, opposing counsel approached me and said, well, why don't we go forward with the joint admin closure the way we had intended? The only thing that happens is that our office takes a position as the default on closure, but I defer to the court's mediator as to how we proceed. In a lot of cases, the mediators choose mediation over our filing of the joint admin closure. And so that's what happened here, but there was always an intent to file the judicial admin closure on behalf of myself and opposing counsel. And I think the purpose was that we thought keeping it in mediation would put more pressure on DHS to respond to my inquiries. So if we kept saying I had mediation coming up on this date, that it would have DHS would respond a lot faster. And that happened. I was never able to get through to a duty attorney. I kept being the desk clerk who kept informing that I need to keep submitting the request for PD over and over and over again. And so I wasn't getting any response. And even today, I don't have a response from DHS. What is PD? PD is prosecutorial discretion. It's the DHS has to decide how they want to focus on their cases or on an individual case, any kind of discretionary exercise to maybe withhold removal or whatever that case may be. Our office doesn't have prosecutorial discretion, we don't have that. It's only a DHS. Correct. So we defer to them. And so what judicial admin closure does is it is also a tool to be able to give DHS an opportunity to respond to these inquiries. Some jurisdictions are better at responding than others. Some are pretty quick. Some you can reach attorneys at the DHS office, others you cannot. So because of this hodgepodge, instead of having a mediator commit its resources in time, and the court commit its resources in time, we elect to do this, this admin closure. Everybody has time to get on the same page. How likely is it that DHS would exercise prosecutorial discretion in this case? Is this a likely candidate? Yes. Out of many of the cases that I've seen, this is probably one of the more strongest cases for prosecutorial discretion. Because the petitioner has been here since 2000. Married to a wife who's actually been granted TPS status. He has a pending I-130 visa application. He has a U.S. citizen child. He's got a U.S. citizen sibling that's petitioning on his behalf. And his only violations here in the country are traffic violations. He had two driving without a license and a speeding ticket. And they occurred in 2010 and I believe 2012. So based on these findings, we agreed that the petitioner was a viable candidate for prosecutorial discretion. But I guess, you know, with the pending litigation, with, you know, the Biden administration, with them trying to iron out how they want to implement their guidance, things have been a little bit slower than we would have liked. So that's kind of like why this Jack motion is helpful. It just sort of, you know, helps be mindful of everybody's time and energy. Well, we could always just resolve the case and then he could still pursue the visa application, correct? Yes, the application is still pending. And that's one of the reasons why I wanted to place it in judicial admin closure for resolution on that, as well as prosecutorial discretion. So he had two avenues of relief, but I can't grant it from my office. And so to take it off the court's docket, judicial admin closure is just simply a tool to kind of take it off the docket so that DHS has a time to exercise whatever authority they're going to exercise over this case. Counsel, if we were to resolve the case, let me just say hypothetically, if we resolve the case and we denied the petition, does DHS still have the discretion not to execute the judgment? I'm not as clear on DHS's position. And I think that's part of the problem because it's sort of, it's sort of influx in between the two different administrations. It's not clear. And I don't think all the offices are on the same exact page. So, so the discretion can only get exercised before there's a final judgment, but not afterwards. Well, well, part of the reason why they have the discretion is that they want to try to preserve resources. If you make a final adjudication on the case, then all the resources would have already been usurped and used up. And so that's part of the purpose of trying to have people weigh in when it's not necessary or to expend their resources and time, resources and time trying to weigh in on the issue of matters. Well, would it be helpful if we deferred submission for six months or something like that? It would be helpful, but I spoke with a PD attorney in Los Angeles. And what they told me was that the cases that are being considered for prosecutorial discretion before their offices, they give priority to the cases that are currently pending before the agency. And that a lot of cases that are coming up through the court of appeals are getting secondary looks. So it's kind of hard to tell how long it will take. So I would say they could do it in six months, but it might take them literally 18 months to adjudicate this PD case. And that's why judicial admin closure has sort of been our go-to giving that kind of space to DHS to be able to adjudicate the request. This case has already been pending in our court for a considerable period of time. And we also have concerns about resolving the cases that we have before us. And so we're not, well, I'm not they come back, it's really difficult for us to get up to speed on it again. And this is the second time we've had this case before us. So we kind of have an interest as well in adjudicating the cases as opposed to putting them in administrative closure and having them on our docket or in our system for years and years. So there's some real potential for relief here. I think it's our interest is in resolving the case and then let the process work as it will. Judge Schroeder? Well, I just, I don't want to leave the petitioner in the soup if we were to decide against him and deprive the agency of its priority exercise of discretion. So would it be helpful if we send it back to mediation? It sounds like it got kicked out of mediation prematurely. I would be okay with that. I agree with mediation. The other concern that a lot of petitioners have too is that if you actually weigh in on a case and if the case or petition is denied on the merits, they may not be eligible for a work authorization as well. So while he's trying to adjudicate PD, you could create a situation, a scenario where he wouldn't have the ability to work while he's still waiting for his application to be considered. And he currently does have a commercial driver's license. He's been a truck driver for several years. So I think it wouldn't be very helpful to him to deprive him of his ability to provide for them while DHS exercises its authority. Well, it looks like DHS needs to move more expeditiously on these cases because it feels like we're being held hostage, all of us to DHS. And I'm not sure that that's a sufficient basis for us to engage in dereliction of our responsibility because DHS is not acting in an efficient manner. Judge Biby, what do you think? Yeah, that's very interesting that if we deny it on the merits that there are collateral consequences for him. So if he would no longer be eligible for a work permit, that would not be a good situation if DHS is inclined to exercise some kind of prosecutorial discretion. Now, on the other hand, the problem is from our perspective for both counsel is it looks like DHS is not inclined to exercise prosecutorial discretion. Been sitting here for years, it went to mediation, it's still pending before us, and you can't get DHS to move off the dime. Your Honor, if I may respectfully add to the court's concern and Judge Bixby, recently there has been, and I believe Ms. Clay is also very well aware of it, there's been what's been issued, which provides a more relaxed concern in terms of adjudicating prosecutorial discretion cases. And that's within the immigration courts, for example, that's been put into actual use in like the month of June, things like that. This follows her memo, which would start these, to put action onto these cases. And so it's what I guess what I'm getting at, Your Honor, is that it's, if it has been slow in the process, I believe that this memo is being the spur to get things moving, which would address your concern as well as Judge Rawlinson and Judge Schroeder's concerns as well. I mean, I'm also just curious as to whether we have any powers here, any coercive powers beyond just simply deciding the case. So for example, if we were to give counsel 30 days for DHS to indicate whether or not it intended to do this, whether that would look to DHS like a mandamus order to go up or down on this one. And Ms. Clay, I don't know whether that would be effective with DHS. I don't know if it would be effective, but I wouldn't oppose using a order from the court to kind of put DHS to make a decision on this particular case. I mean, I've had cases that go straight for, you know, relief in a couple, like 60 days. But you know, in this particular instance, this particular office is a little bit slower on moving with the PD inquiries. And it was one of the larger jurisdictions that handle immigration cases. So, but I wouldn't, this particular case, I think the, we had only been in mediation for about six months, I believe. I think we went into mediation in August of 2021. And then the case was placed back on the docket in April. So it hasn't necessarily been that long, even though I filed my briefs, I believe it was in December of 2020. You indicated before that there was a misunderstanding that caused us to get the order that mediation had been exhausted. Yeah, I think, well, when we were in mediation, like I always tell the mediator that our office prefers to file case, the judicial admin closure motion. What happened was, but I always defer to the mediator. And so if the mediator says that based on the posture of the case, because it was so close, and it had been set to panel that mediation was a preferred option, I deferred to his preferred option. And I was under the impression that he was going to tell us when it was okay to file a joint admin closure motion. And that never happened. We got the motion to release the mediation and Jenny and I kind of flat footed, like, I thought we were waiting for him to tell us it was okay. From like, we didn't know if he would entertain the joint admin closure so close to oral argument, since it was, you know, the notice of oral argument had came up. And I think that was sort of the misunderstanding at the time, was it really a viable option, because we could have done it initially. Just thought maybe it was so late in the process that maybe they thought that mediation would be a better way to move forward. And well, the purpose of mediation is for the parties to agree to resolve the case. And this is the appeal. And so from the mediators perspective, if the parties were not moving toward resolution, administrative closure is not resolution of the case. And so that's probably why the mediator released the case for mediation, because the parties had not agreed on a way to resolve the case. And it seems like there still is no agreement on how to resolve the case, because agreement in this case would look like some type of relief being granted so that the appeal could be dismissed. But I do think that we have come to a conclusion, we think that I-130 is a possible resolution in the case. And we also think that PD is a possibility. The only problem is DHS is the agency that has that discretion. And so I can't do anything about it. And the council can't do anything about it. And we were just trying to put it in the hands of the client who's the one who has the authority to do that. But the client being DHS. Yes, our client DHS, because the authority we're hamstrung to if we had the authority like we did, I mean, some of the Obama administration, they were able to give us a little bit more leeway to go back on PD cases. And then we could sit there and say, yeah, this is good for PD and then kind of chime in with them. And then they chime back. But this time, I think they've elected to entertain all the applications directly. And that has created a different kind of bottlenecking right now, because they want, I guess they want the Office of the Chief Counsel to look over all of these PD requests. And so since we can't do anything about it, and the opposing counsel can't do anything about it, we were just trying to just table the case off the docket until DHS, who has the authority to do something about it, resolve it. Well, but counsel, our concern is, at least my concern is that I don't, we don't want to, I don't want to just put this on ice indefinitely. So is there a way that we can put a string on this thing so that before our memories go completely cold on it, we can have it resolved, get word from DHS one way or the other? How do we do that? I think the closure motions don't have to be indefinite. We could put in deadlines for, you know, tapping back in to see if DHS has responded. So like you were saying, Honorable Schroeder, that maybe six months might give DHS enough time to chime in on it. And we have to be open-ended, revisited at that time. And if it's easier to monitor within the mediation program, then I'm okay with that as well. He can track the progress of the DHS and their response or inquiry. But you also think that maybe an order from the court to DHS to indicate whether it It might be helpful. Now, you know, I haven't considered it legal ramifications of it, but I mean, it's helpful for me to be able to go to DHS and say, hey, DHS will have a deadline for when they want to know what's going on with this particular application. I like that better that if our order says something like, you know, if DHS hasn't indicated one way or the other, then we just restore the case to the calendar for decision because otherwise I don't see any end in sight. Yeah. So we would essentially defer to submission or? We'd have continued deferral because right now, isn't submission deferred right now? So we could have continued deferral of submission for six months to give DHS time to give us an indication of whether or not it wants to exercise prosecutorial discretion. And if we don't receive any response in time, we'll just resubmit it for a decision. So I take it that the government would be satisfied with that? Yes. And I would immediately get in contact with DHS to see a movement on a case. Okay, great. And what about the petitioner? I only, I believe that I share all common ground with both the court as well as government council on this. I just in an abundance of caution, I'm wondering, can the six month time be just in an abundance of caution, given the holiday season for all parties reviewing concern within that six months, could we have nine months? Well, I'm very concerned about the government that's dealing with the kind of problems they are. I'm wondering whether there should be no more than 60 days and force them to make a decision, go up or down, are you going to do this or aren't you going to do this? And so that we're not dithering around. Six months seems like a long time and nine months seems like a very long time. Yeah, I wouldn't be inclined for nine months. I mean, I was thinking three months, but I thought maybe six months would be a good time. I fall back on six months. What happens if we went to 60 to 90 days? 60 to 90 days. They're going to, oh, 60 to 90 days. What do you think, Judge Schroeder, about 60 to 90 days? Well, from what I've heard, I think that's not enough. Ms. Clay, you may have a better sense of that. I just feel like maybe if there's a short deadline, if they're going to do six months, they're going to put it off for five and then decide it in the last 30 days. That's true. It's just the way bureaucracies work. It's the way I would work if I were in charge of DHS. So I'm not throwing stones here. Well, how about 120 days? That'll put it into the fall. I have no problem with 120 days. Either they're going to do it or they're not going to do it. Right. Okay. All right. We'll send an order out. We'll discuss this and we'll send an order out, but it probably will be along the line of 120 days since we don't have consensus on six months. Okay. Thank you so much, your honors. Okay. All right. All right. Thank you. We are adjourned for this session. Thank you.
judges: SCHROEDER, RAWLINSON, BYBEE